# CHARLESTON.

R. W. HAWS *et al* v. THE COUNTY COURT OF WAYNE COUNTY.

Submitted September 14, 1920.    Decided September 21, 1920.

1.   COUNTIES—*County Authorities May be Enjoined from Diverting Proceeds of Road Bonds to Roads not Specified by Voters.*

The voters of a county, in the issuance of bonds for the purpose of raising funds for the construction or improvement of public roads, may place upon the expenditure of such funds any limitations or restrictions not forbidden by the fundamental law, and those charged with the expenditure of such funds will be enjoined from diverting the same to any other purpose than that to which they are directed to be applied by the terms of the grant.    (p. 653).

2.   HIGHWAYS—*Authorities Will be Enjoined from Constructing Road by Route Different from a Practicable Route Specified in Grant of Funds.*

Where the grant of funds for the improvement of public roads provides for the expenditure thereof in the construction and improvement of a road from a designated point, by way of

a certain stream, which does not reach the first point named, to another designated point, the public authorities charged with the expenditure of such funds, in the absence of any other controlling factor, will be required to construct said road, from the first point designated, to the stream at the nearest practicable point at which it can be reached, and thence up said stream in accordance with the order; and an attempt upon the part of such authorities to construct said road by beginning at the point first named, and reaching the designated stream by a devious route over the waters of other streams, at a point seven and one-half miles from the beginning, will be enjoined, where it appears that the designated stream can be reached by an entirely practicable route at a point one mile distant from the designated beginning point. (p. 653).

(WILLIAMS, PRESIDENT, absent.)

Appeal from Circuit Court, Wayne County.

Suit for injunction by R. W. Haws and others against the County Court of Wayne County. Temporary injunction granted. From an order dissolving it, plaintiffs appeal.

*Reversed, injunction reinstated, remanded.*

Geo. J. McComas, for appellants.

Holt, Duncan & Holt, Charles W. Ferguson and P. H. Napier, for appellee.

RITZ, JUDGE:

Upon the petition of the requisite number of citizens and taxpayers the County Court of Wayne County submitted to the voters of that county the question of the issuance and sale of one million dollars of bonds for the purpose of constructing and improving the public roads. In the petition praying for the submission of the question a number of roads were specified, to the improvement and construction of which the money was to be applied in the event of a favorable issue of the election, and this petition was set out at length in the order submitting the question to the voters. At the election the requisite majority of the votes cast were in favor of the issuance of said bonds, and they were accordingly issued and sold. Among the roads specified in the order was a road from Kenova to Wayne, the county seat of the county. The plaintiffs in this case contend that the county court is attempting to divert the fund appro-

priated for the purpose of improving and constructing this road from the location specified in the order to a different location, and upon their bill a temporary injunction was granted inhibiting the county court from expending the money for the construction and improvement of the road upon the location selected by it. This injunction, on the motion of the county court, was dissolved, and this appeal is prosecuted from that order.

The road about which the controversy arises is described in the petition and order as, "A road beginning at Kenova, thence up Twelve Pole via Lavalette to Wayne, county seat of Wayne County." It appears that the county of Wayne borders on the Ohio River for a distance of about 7½ miles, and that the western boundary of this county is the Big Sandy River; that Twelve Pole River extends practically through the center of the county, emptying into the Ohio River just above Ceredo. The town of Kenova is located upon the Ohio and Big Sandy Rivers, and the town of Ceredo just to the east of the town of Kenova, the western corporate line of the town of Ceredo and the eastern corporate line of the town of Kenova being a common line. Twelve Pole River does not actually touch the corporate limits of the town of Kenova, but runs within one mile thereof. At this point there is a bridge across Twelve Pole connecting what is called the Piedmont Road, one of the highways of said county extending from the Cabell county line to the town of Ceredo, with the public streets of that town, and the town of Kenova is reached from this bridge over the paved streets of the town of Ceredo. The contention of the plaintiffs is that the road intended to be improved by this bond issue is the road extending from Kenova through Ceredo and up Twelve Pole to Wayne. It is shown that there is also another road leading from Kenova to Wayne. This road extends up what is called Happy Hollow; thence along Sweet Run and Dock's Creek; thence over on to Buffalo Creek, a tributary of Twelve Pole, and down that creek to its mouth, reaching Twelve Pole at the town of Dunleith, seven and one-half miles from the town of Kenova. It is the location of the road between these points, Dunleith and Kenova, that is in dispute. From Dunleith to Wayne there is no controversy about its correct location. The county court found that the description contained

in the order submitting the question to the voters was so am-
biguous that it would apply equally to either of the locations
above referred to, and this being true that it was its duty to
select the location upon which the road should be constructed.
It thereupon selected the road leading out of Kenova up Hap-
py Hollow and reaching Twelve Pole via Sweet Run, Dock's
Creek and Buffalo Creek, while the plaintiffs, as before stated,
contend that the road described in the order is the one leading
up Twelve Pole. It may be observed that the Happy Hollow
road selected by the county court is one of the well known roads
of the county, and that the waters of Sweet Run and Dock's
Creek are not Twelve Pole waters, but waters of the Big Sandy,
and the road upon this location does not even reach tributary
waters of Twelve Pole until it crosses over on to Buffalo Creek,
a short distance from the mouth of that creek at Dunleith.

The right of the voters to limit the county court or other au-
thorities in the expenditure of money granted by the issuance
of bonds is not questioned, and we have heretofore held that
when the voters do in the grant of such money specify the pur-
pose to which the same is to be applied, no administrative au-
thority will be permitted to apply it to any other purpose.
*Lawson* v. *County Court,* 80 W. Va. 612; *Harner* v. *County
Court,* 80 W. Va. 626.

The only question involved here is the proper construction
of the language used in the grant by the people. The plaintiffs,
of course, contend that when the people voted money to build
a road from Kenova up Twelve Pole to Wayne the plain mean-
ing is that this road should reach Twelve Pole by the most di-
rect and shortest practicable route, and that the language used
will not permit the expenditure of the money for the construc-
tion of a road from Kenova for a considerable distance over
waters tributary to the Big Sandy, and not reaching the stream
designated in the order until a distance of 7½ miles has been
covered. And it occurs to us that this contention is sound. It
must be borne in mind that the road by way of Happy Hollow,
which the County Court now seeks to improve with this money,
was a well known road over streams whose names were well
known to the people of the community and the county court,
and the fact that none of these streams are mentioned in the

order is significant that there was no intention that their waters should be traversed before reaching Twelve Pole. For the purpose of the expenditure of this money it may be said that Twelve Pole is practically at the town of Kenova. The streets of Kenova are improved and paved, likewise the streets of Ceredo, so that Twelve Pole can be reached from Kenova over paved city streets. Unless there is some other controlling factor it would seem clear that when the voters granted this money for the purpose of constructing the road from Kenova up Twelve Pole to Wayne it was a plain direction for those charged with the expenditure of the money to extend the road from Kenova to Twelve Pole by the nearest and most direct practicable route, and when that stream is reached to improve the road along the same. It would require a stretch of the imagination to say that the voters could have contemplated that a road constructed up Happy Hollow, down Sweet Run, up Dock's Creek, across the hill separating the Twelve Pole and Big Sandy watersheds, and down Buffalo Creek, a distance of $7\frac{1}{2}$ miles, was a road up Twelve Pole. It seems that these streams were as well known as Twelve Pole itself, and the defendant says that this Happy Hollow road was known by that designation, and was one of the frequently-used roads of the county, and notwithstanding this none of these streams are mentioned in the order. We cannot construe this order as warranting the action of the county court in appropriating any part of this fund to the improvement of the Happy Hollow road. Clearly it was its duty in applying the fund to improve a road from Kenova up Twelve Pole, reaching the same at the nearest practicable point from Kenova, and not at the most distant point.

There is another thing in the order upon which the people voted, which renders this conclusion irresistible, and that is that the order provides for a road from Dunleith up Buffalo Creek in addition to the road here referred to. If the construction of the county court is correct, then the voters did the anomalous thing of providing for the road here in question, a Class A road down Buffalo Creek to Dunleith, and for a Class B road up Buffalo Creek from Dunleith. We cannot assume that they ever intended to do such a thing as this, and the fact that this latter provision is made in the order is, to say the

least, very strong evidence that the construction placed thereon by the plaintiffs is the proper one.

We will, therefore, reverse the decree of the Circuit Court of Wayne County, reinstate the temporary injunction, and remand the cause.

*Reversed, injunction reinstated, remanded.*