J. B. Palmer et al. v. State Highway Commission, Appellant.—69 S. W. (2d) 653.

Division One, March 14, 1934.

*John W. Mather, Ralph M. Eubanks* and *B. F. Boyer* for appellant.

*Irwin & Bushman, Harry L. Buchanan* and *Hutchinson & Hutchinson* for respondents.

FRANK, P. J.—Suit by injunction to enjoin the State Highway Commission from abandoning a certain road in Maries County, and to compel said Highway Commission by mandatory order to proceed to construct, repair and maintain said road as a part of the State highway system. The judgment below granted the relief prayed for in the petition and the Highway Commission appealed.

The road in controversy is that part of a road running west from

a point known as Hawkins Store to the town of Vienna all in Maries County. Section 29 of the Centennial Road Law (now Sec. 8120, R. S. 1929), describes the road, of which the one in question is a part as follows:

"Beginning at the Maries-Osage-Gasconade County line east of Belle, thence south and west through Belle and Hawkins Store to Vienna." Hawkins Store is located approximately eight and one-half miles south and about one-half mile west of Belle. Vienna is located approximately fourteen miles practically due west of Hawkins Store. A concrete highway, No. 63, is already constructed across Maries County in a south and east direction through Vienna to the Maries-Phelps County line. Concrete Highway No. 63 runs in a southeast course from Vienna and passes a point approximately five miles southwest of Hawkins Store.

The proposed highway south and west through Belle and Hawkins Store to Vienna, is Highway No. 28. There is no dispute about the location of this proposed road from Belle to Hawkins Store. The bone of contention is how the road should run from Hawkins Store to Vienna. Respondents contend that after the proposed road reaches Hawkins Store it should then go fourteen miles west to Vienna, (1) because the Legislature by Section 29 of the Centennial Road Law, made the then existing east and west road between said points a part of the State highway system, and (2) because the Highway Commission adopted said road as a secondary road in said highway system, secured right of way from adjacent landowners for the purpose of widening said road, marked same as Highway No. 28, and expended state road funds in maintaining it from 1921 or 1922 until 1928. On the other hand, the Highway Commission proposes to build a road from Hawkins Store southwest a distance of approximately five miles to and connecting with concrete Highway No. 63 thus furnishing the traveling public an improved highway through Belle and Hawkins Store to Vienna, the three points named in the statutes. Otherwise stated, the Highway Commission's contention is that the three points named in the statute may be connected with an improved highway by building approximately five miles of road southwest from Hawkins Store to and connecting with Highway No. 63, and using Highway No. 63 for the remainder of the route to Vienna, thereby avoiding the construction of a road from Hawkins Store west to Vienna, a distance of approximately fourteen miles, thus saving the State the construction of approximately ten miles of road at a cost of $60,000.

We will first take respondents' contention that the Legislature by statute made the fourteen mile east and west road from Hawkins Store to Vienna a part of the State highway system.

The statute referred to is Section 29 of the Centennial Road Law (Laws 1921, First Ex. Sess., p. 145, sec. 29), now Section 8120, Re-

vised Statutes 1929. That section, among other things provides, "There is hereby created and established a state-wide connected system of hard-surfaced public roads . . . which shall be located, acquired, constructed, reconstructed and improved and ever after maintained as public roads. . . . Such state-wide connected system of hard-surfaced roads shall be known as the 'state highway system,' and shall consist of highways along the following described routes." Then follows a description of the routes by counties. This statute describes the road in question as follows:

"Beginning at the Maries-Osage-Gasconade County line east of Belle, thence south and west through Belle and Hawkins Store to Vienna."

Respondents construe this statutory designation of the route as locating the road between the points named, the contention being that the proposed road must run from Belle practically south to Hawkins Store, then follow the old road from Hawkins Store practically due west to Vienna. Respondents' contention is contrary to this court's construction of the statute. The road in question is a secondary road. We have held that the statute does not locate such roads between the points named in the statute, but that such location is left to the sound discretion of the Highway Commission. Speaking of this statute in Castilo v. State Highway Commission, 312 Mo. 244, 265, 279 S. W. 673, 676, we said:

"The only thing done toward the location of the routes comprising the state highway system was to name certain towns, lines, and points in each county through which they should pass. It clearly follows that the location of the routes of the entire highway system between these named towns, lines and points was . . . left to the sound discretion of the highway commission."

WHITE, J., in a concurring opinion filed in the Castilo case, said:

"Section 29 creates a 'state-wide connected system of hard-surfaced public roads' . . . 'which shall be located, acquired, constructed,' etc. If such roads are to be 'located' and 'acquired,' then the commission, if any one, is empowered to 'locate' and 'acquire' them between designated points. That is not only implied, but expressed, in the terms of Section 4, by which the commission is vested with 'all power necessary or proper to enable the commission . . . to carry out fully and effectively the purposes of the act.' In carrying out the purpose of the act, the commission must 'locate' the roads, for, except at certain designated points, they are not located, even at the county lines. That is an original duty. It involves no change of lines or points and the word 'change' used in the proviso, cannot apply to the discharge of that duty."

RAGLAND, J., also filed a concurring opinion in which he said:

"The State Highway System was not made up of public roads existing at the time of the passage of the act. Note the language of

Section 29. 'There is hereby created and established a state-wide connected system of hard-surfaced public roads, . . . which shall be located, acquired, constructed, reconstructed and improved . . . along the following described routes.' In the description of the routes by counties which immediately follows there is not a single reference to an existing public road or survey. Nor does the next section (Section 30) refer to surveys previously made as descriptive of the routes; it merely provides that such surveys shall be utilized whenever practicable. The only means given for ascertaining the routes intended are named points and general directions, and the general directions are merely incidental, performing no other function than that of identifying the points designated.''

In the later case of State ex rel. Liberty Tp. of Stoddard County v. State Highway Commission, 315 Mo. 747, 287 S. W. 39, 43, this court en banc expressly approved the above quotations from the principal and both concurring opinions in the Castilo case.

In the light of the cases to which we have called attention, it is settled law that the location of roads in the State highway system between the points named in the statute is left to the *sound* discretion of the State Highway Commission. This being true, it must necessarily follow that the statutory designation of the road in question as *south* and *west* through Belle and Hawkins Store to Vienna, does not mean that the road must run either directly south or directly west at any given point. If the words ''south'' and ''west,'' as used in the statute, mean ''directly south'' and ''directly west'' then the statute itself would locate the road and the commission would have no discretion as to its location. Our construction of the statute is that the directions designated therein are mere general directions which may be varied by the commission to suit the conditions at the time the road is located so long as the act of the commission in locating a road amounts to a substantial compliance with the statute, and effectuates the legislative intent. We, therefore, deny respondents' contention that the statute locates the road in question west from Hawkins Store, along the route of the old road to Vienna.

 The next question is, does the road as proposed by the commission amount to a substantial compliance with the statute. When the road reached Hawkins Store, two courses were open to the commission. One was to locate the road west from Hawkins Store to Vienna, a distance of approximately fourteen miles, the other was to go southwest from Hawkins Store, a distance of approximately five miles and connect with Highway No. 63, a concrete highway already constructed, and use that highway as the road from the junction of the two roads to Vienna, thus saving the construction of approximately ten miles of highway at a cost of $6000 per mile. The commission chose the latter course and by so doing saved to the road fund approximately $60,000. It should be commended for so doing provided

its act in thus locating the road was a substantial compliance with the statute. Otherwise stated, the location of the road in question, having been by statute left to the sound discretion of the commission, such location cannot be successfully assailed unless it amounted to an abuse of the discretion committed to the commission. If we should compel the commission to locate the new road on the route of the old east and west road between Hawkins Store and Vienna, the new road would practically parallel concrete Highway No. 63 for a distance of ten miles, the two roads being from three to five miles apart. In Benton County v. State Highway Commission, 52 S. W. (2d) 995, 998, we said, "It was evidently not intended to construct two parallel north and south roads only three and one-half miles apart even for a distance of four or five miles, thus increasing the mileage and cost to that extent."

The construction of approximately five miles of road southwest from Hawkins Store and connecting with concrete Highway No. 63, not only saves the construction of approximately ten miles of road at a cost of $60,000, but it saves future maintenance of practically ten miles of road, and at the same time connects all points designated in the statute. If the statute located the new road along the route of the old road between Hawkins Store and Vienna, then the proposed location of the road would take from the citizens of that community a right which the statute gave them, a thing which could not be done, however plausible the reasons for so doing might be. But where, as here, the location of the road is left to the discretion of the commission, we cannot say, under the facts shown, that the proposed location of the road is such an abuse of the commission's discretion as to warrant the interference of the courts.

Respondents contend that the Highway Commission adopted the road from Hawkins Store west to Vienna as a part of the State highway system, hence it was its statutory duty to forever maintain it as such.

In State ex rel. Reynolds County v. State Highway Commission, 328 Mo. 859, 42 S. W. (2d) 193, 194, we held that the adoption of a road or project as a part of the State highway system must be shown by the records of the Highway Commission. We held the same thing in Norborne Land Drainage District Co. v. Cherry Valley Township, 325 Mo. 1197, 31 S. W. (2d) 201, 208. No such showing was made in the case at bar. Further contention is made that the acts of the Highway Commission in procuring adjacent landowners to set their fences back in order to widen the road, maintaining the road with state funds for several years, marking it as Highway No. 28, and publishing maps in which it is shown as Highway No. 28, amounted, in law, to an adoption of the road as a part of the State highway system. In the Reynolds County case, supra, we held that such acts on the part of the commission did not amount to an adoption

of a road as a permanent part of the State highway system. The question in that case was whether or not certain projects in Reynolds County had been adopted as a part of the State highway system. Certain minutes, letters and resolutions of the commission were introduced in evidence, concerning which we said:

"We have examined them and find no word therein tending to show that these projects have been taken into the State highway system. They do tend to show that when the Centennial Law became effective and the commission organized, maps were made of the numerous projects over the State and a policy announced to maintain these projects pending the completion of the system. In furtherance of this policy, it designated and marked these and other projects as a part of the system."

Further in the Reynolds County case, speaking of the adoption of an amendment to the Constitution authorizing the use of certain funds for the maintenance of roads, we said:

"The State Highway Commission and other officials of the department were active in support of this amendment. In the meantime it requested the counties to maintain the roads therein pending the adoption of the amendment. It also announced by resolution that it would take over these projects and maintain them if the amendment was adopted. This resolution and other communications of a similar nature were presented to the County Court of Reynolds County. On adoption of the amendment the commission authorized the State Highway Engineer to take over and maintain these projects. He did so and the maintenance of these roads and bridges by the commission have continued to the present time. This does not tend to show that these projects have been permanently taken into the State highway system. It does tend to show that they have been temporarily taken over and maintained pending the completion of the State highway system."

Following the Reynolds County case, we hold that the marking, mapping and maintaining of the old road did not make it a permanent part of the State highway system.

In support of the contention that the proposed road is not the route designated by statute, respondent cites the following cases: Scharnberg v. Iowa State Highway Commission, 243 N. W. 334; Haws v. County Court, 86 W. Va. 650; Watts v. Dept. of Public Works & Buildings, 328 Ill. 587, 160 N. E. 201; Carlyle v. State Highway Commission (N. C.), 136 S. E. 613; Fletcher v. Ely (Tex. Civ. App.), 53 S. W. (2d) 817; Averitt v. Dodd (Ark.), 265 S. W. 70. The cited cases are distinguishable from the case at bar because not based on a similar state of facts. Besides if they supported respondents' contention they would then be in conflict with former decisions of this court which hold that our statute does not locate or designate the route of the roads between the points named in the

statute, but leaves such location to the discretion of the State Highway Commission.

For the reasons stated, the judgment below should be reversed. It is so ordered. All concur, except *Hays, J.*, absent.