Fourth Division

July 10, 1997

No. 1-96-1669

AMERICAN STATES INSURANCE COMPANY, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellant, ) COOK COUNTY.

)

v. ) 

)

LIBERTY MUTUAL INSURANCE COMPANY, )

TURNER CONSTRUCTION COMPANY, ) 

)

Defendants-Appellees, )

)

JAMIE NAVARRETE, and LETICIA )

NAVARRETE, ) HONORABLE

) EDWIN M. BERMAN,

Defendants. ) JUDGE PRESIDING.

PRESIDING JUSTICE WOLFSON delivered the opinion of the 

court:

American States sued Liberty Mutual, seeking contribution of defense costs arising from an underlying suit.  Liberty Mutual moved for summary judgment, claiming that it did not have a duty to defend the underlying action.  The trial court granted Liberty Mutual's motion for summary judgment.  American States appeals.  We affirm.

FACTS

The plaintiff-appellant in this case is American States Insurance Company (American States).  The defendants below were Liberty Mutual Insurance Company (Liberty Mutual), Turner Construction Company (Turner), Jamie Navarrete (Jamie), and Leticia Navarrete (Leticia) (collectively the Navarretes).  The Navarretes are married.  Liberty Mutual and Turner are the defendants-appellees, collectively "Liberty Mutual."

Turner was the general contractor for the construction of a building at 1725 West Harrison in Chicago, Illinois.  The building is part of the Rush-Presbyterian-St. Luke's medical center.  Fisher, Albright and Masters (Fisher) was a subcontractor on the project.  Jamie Navarrete was one of Fisher's employees.

On June 27, 1991, Jamie was injured at the job site.  The Navarretes sued Turner in the Law Division of the Circuit Court of Cook County on September 8, 1992.  According to the complaint, Jamie hurt his back while lifting heavy supplies through a fourth floor window.  Allegedly, there had been no other way to get those supplies to that part of the site.

Jamie claimed that he was injured because Turner had violated the Structural Work Act and because Turner had been negligent.  Leticia claimed loss of consortium.

American States issued a policy to Fisher (American policy).  That policy contained a clause which read:

"WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule [Turner] but only with respect to liability arising out of 'your work' for that insured by or for you."

Under the policy, "your work" is:

"a.  Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations."

The American policy included this provision:

"4.  Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.  Primary Insurance

This Insurance is primary except [when certain conditions apply].  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described *** below."

The Liberty Mutual policy (Liberty policy) contains an identical "other insurance" provision.

The Liberty policy contains an additional paragraph, endorsement number seven:

"It is agreed that this policy does not apply to that portion of the loss for which the Insured has other valid and collectable insurance, as an Additional Insured on a Liability Insurance policy issued to a subcontractor of the Named Insured whether such policy is on a primary, excess or contingent basis."

American States agreed to undertake Turner's defense of the Navarrete suit pursuant to a reservation of rights.  American States claimed that Liberty Mutual had a duty to share the defense costs for the Navarrete suit.  American States sued Liberty Mutual.

Liberty Mutual moved for summary judgement, arguing that it did not have a duty to defend the Navarrete suit.  The trial court granted Liberty Mutual's motion.

American States appeals.  We affirm.

DECISION

American States admits that it has a duty to defend Turner in the underlying action.  It argues that Liberty Mutual has an obligation to share that duty.

Courts compare the allegations of the underlying complaint to the policy to determine when an insurer's duty to defend arises.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 125, 607 N.E.2d 1204 (1992).  The insurer has a duty to defend if the allegations of the complaint fall within, or potentially within, the policy's coverage.  
Outboard Marine
, 154 Ill. 2d at 125.

Insurers which issue excess policies, however, are not liable to pay defense costs before the conclusion of the underlying suit.  Instead, insurers which issue primary policies have the primary duty to pay defense costs.  See 
Automobile Underwriters, Inc. v. Hardware Mutual Casualty Co.
, 49 Ill. 2d 108, 112, 273 N.E.2d 360 (1971); 
Home Indemnity Co. v. General Accident Insurance Co. of America
, 213 Ill. App. 3d 319, 321-22, 572 N.E.2d 962 (1991); 
Fireman's Fund Indemnity Co. v. Freeport Insurance Co.
, 30 Ill. App. 2d 69, 76, 173 N.E.2d 543 (1961).

The Liberty Mutual policy contains an endorsement seven:

"It is agreed that this policy does not apply to 
that portion of the loss for which the Insured has other valid and collectable insurance
, as an Additional Insured on a Liability Insurance policy issued to a subcontractor of the Named Insured whether such policy is on a primary, excess or contingent basis."  (Emphasis added.)

Because of this endorsement, the trial court found that the Liberty Mutual policy was an excess policy, not a primary policy.  It found that Liberty Mutual did not have a duty to defend Turner.

American States argues that endorsement seven cannot be an excess clause.  Its position rests in its reading of 
Home Insurance Co. v. Liberty Mutual Insurance Co.
, 266 Ill. App. 3d 1049, 641 N.E.2d 855 (1994).  

In 
Home Insurance
, the Liberty Mutual policy contained an identical endorsement.  This court found that this endorsement was not an excess clause.  Liberty was required to share defense costs in an underlying suit.

The reason Liberty Mutual was liable for defense costs in 
Home Insurance
 was that the Home policy contained very specific exclusions.  The Home policy did not cover the Structural Work Act cause of action described in the underlying complaint.  It did cover the negligent failure to supervise count.  The Liberty policy did cover the Structural Work Act action.  This court found that Liberty Mutual was a primary insurer.  It held that Liberty Mutual had an obligation to share the defense costs 
pro rata
.

American States contends that the same reasoning should apply to this case.  It says its policy does not cover all the allegations made in the Navarrete suit.  It claims that Liberty Mutual should share the defense costs because Liberty's policy will cover those aspects of the underlying suit that American States' policy does not cover.

In this case, there is no obvious exclusion in the American State's policy.  Unlike Home, American States cannot argue that its policy clearly excludes a specific cause of action described in the Navarrete complaint. 

In 
Home Insurance
, this court suggested that the result might have been different had the Home policy not contained a specific exclusion.  Liberty argued that in 
Transamerica Insurance Group v. Turner Construction Co.
, 33 Mass. App. Ct. 446, 601 N.E.2d 473 (1992), the same endorsement 
had been found to render Liberty's coverage excess. 

We considered 
Transamerica
, and found:

"The case does involve Turner and Liberty, and the Liberty endorsement is the same as the Liberty endorsement in this case; but there is one glaring distinction between that case and the case before us.  The subcontractor in that case agreed to indemnify Turner 'for 
all claims
 arising out of or occurring in connection with the execution of the Work.'"  
Home
, 266 Ill. App. 3d at 1055 (emphasis in original).

In the case before us, the American policy contains a similar provision: 

"WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule [Turner] but only with respect to liability arising out of 'your work' for that insured by or for you."

American States claims that the clause in 
Transamerica
 is different than the clause in this case.  The policy in 
Transamerica
 covered "all claims" arising from the work.  Here, American States' policy covers "liability" arising from Fisher's work.  American States cites no decision holding that these phrases are unlike enough to require a different result in this case.  The "glaring distinction" we found in 
Home Insurance
 is not present in this case.

American States contends that some allegations of the Navarrete complaint are not covered by its policy.  It claims  there may be aspects of the Navarrete complaint that did not arise out of Fisher's work.  That is, says American States, there may be aspects of the Navarrete suit that involve only Turner's work.  We do not see how.

Navarrete was working for Fisher at the time of the

 accident.  The underlying complaint specifically claims that Navarrete was injured while "going about the business of his employer, [Fisher]."  He was doing an activity in furtherance of the work Turner hired Fisher to do.  

In 
Shell Oil Co. v. AC&S, Inc.
, 271 Ill. App. 3d 898, 906, 649 N.E.2d 946 (1995), a subcontractor had a contract which required any relevant insurance policy to "include[] OWNER and CONTRACTOR as additional insureds as regards their liability 
arising out of
 operations
 performed for OWNER and CONTRACTOR by SUBCONTRACTOR under this Subcontract."  (Emphasis in original.)  Its insurance contract contained similar language.  A subcontractor's employee was injured on the owner's premises.  This court found that the insurer was obligated to defend the action because the underlying plaintiff's injuries "arose out of" operations performed for the owner and subcontractor.  "The injuries would not have occurred 'but for' [the underlying plaintiff's] employment by [the subcontractor and the subcontractor's] presence on [the owner's] premises."  
Shell Oil Co.
, 271 Ill. App. 3d at 907.  

In this case, American claims there are a number of ways that Turner could have contributed to the accident by itself without involving "Fisher's work."  The accident occurred, however, while Jamie was working at the construction site for Fisher.  We find that "but for" Jamie's employment by Fisher and Fisher's presence on the job site, Jamie would not have been injured.  The accident arose from Fisher's work for Turner.  We see no real possibility of non-coverage by the American policy.

American States contends that the trial court's finding should be reversed because it amounts to a 
de facto
 finding that Liberty Mutual will not be liable to indemnify it at the conclusion of the underlying suit.  It says trial courts should not make any findings concerning an insurer's right to indemnification before the underlying suit is completed.  See 
National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Glenview Park District
, 158 Ill. 2d 116, 632 N.E.2d 1039 (1994).

The trial court specifically found that American States could later seek indemnity from Liberty Mutual.  We agree.  Just because Liberty Mutual is not obligated to pay for defense costs now does not mean it never will be liable.  The Liberty Mutual policy states that it will apply to "
that portion of the loss for which the Insured has other valid and collectable insurance[.]" 

American States has not said that once its policy is exhausted, the Liberty Mutual policy will not "kick in."  No party has claimed that, within the limits provided in the Liberty policy, Liberty Mutual will not have to pay for any portion of the judgment not covered by American States' policy.  The trial court's order did not exclude Liberty from all potential liability.

American States claims that the Liberty endorsement is ambiguous.  We do not agree.  The clear intent of the Liberty endorsement is to avoid obligation for any losses covered by other insurance.  While the endorsement does not specifically say that the Liberty policy is an excess policy, it becomes active only when other insurance policies are exhausted.

American States claims that the Liberty policy cannot be excess because Turner paid more for the Liberty policy than Fisher paid for the American policy.  It cites 
Illinois Emcasco Insurance Co. v. Continental Casualty Co.
, 139 Ill. App. 3d 130, 487 N.E.2d 110 (1985).  That case however, "involved the 'unique and special coverage' of an umbrella policy.  
Home Indemnity Co.
, 213 Ill. App. 3d at 324.  We conclude the policy fees do not establish which policy is primary and which is excess.

CONCLUSION

The trial court's order granting summary judgment to Liberty Mutual is affirmed.  

AFFIRMED.

CERDA and BURKE, JJ., concur.