**AUTOMOBILE CLUB INTER–
INSURANCE EXCHANGE,
Appellant,**

v.

**Rommel MEDRANO, et
al., Respondents.**

**No. ED 80312.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 25, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 7, 2002.

Application for Transfer Denied
Sept. 24, 2002.

William F. James, Kristi J. Booker, St. Louis, MO, for appellant.

Charles G. Schierer, Donald L. O'Keefe, Jr., Michael J. Ward, St. Louis, MO, Gary A. Growe, Clayton, MO, for respondents.

MARY R. RUSSELL, Judge.

Automobile Club Inter–Insurance Exchange ("Insurer") appeals from a declaratory judgment finding coverage under two different automobile policies for an accident involving two pedestrians and a van. We find Insurer's failure to file the rele-

vant portion of one of the policies results in an incomplete record on appeal and precludes analysis of Insurer's first point wherein it argues that coverage did not exist under a policy issued to the van's owner. As a result, we dismiss Insurer's first point. We find no coverage under the other policy as the persons involved in the accident were not covered persons as defined in that policy. We reverse the trial court's judgment with respect to that policy.

Insurer filed a three-count petition for declaratory judgment. The named defendants in the action were Rommel Medrano; David Carron; Jason Meriwether; Pulitzer Publishing Company; Seung Lee; and Kevin, Kerry, and Kurt Krueger and Kirsten Krueger Aiello (collectively "Defendants").

At one time, Carron owned and operated two newspaper routes. After some problems with one of Carron's routes and with his driver's license, the newspaper required him to sell both routes. He sold one, and he purported to sell the other to his longtime friend, Medrano. Medrano and Carron signed a contract for a sum of money, and Medrano represented to the newspaper that he was the owner even though no money was paid in the ostensible sale. Carron continued to operate and receive profits from the route.

The parties stipulated to several facts. To aid the reader's comprehension of the facts, we present them in the following order:

> On or about April 8, 1999, a 1987 Dodge Ram van owned by Defendant David Carron, while being driven by Defendant Jason Meriwether, was involved in a motor vehicle collision on Hanley Road in St. Louis County, with pedestrians Seung Lee and William Krueger in St. Louis County, Missouri.

> The 1987 Dodge Ram van involved in the motor vehicle accident of April 8, 1999, was owned by David Carron.

> As a result of the aforesaid accident, Defendant Seung Lee claims to have sustained personal injuries, with an action [then] pending in the Circuit Court of the City of St. Louis, bearing cause number 992–08609, a copy of which [was] attached [to the stipulations of fact] and made a part [t]hereof.

> William Krueger, who was survived by Defendants Kevin P. Krueger, Kerry Krueger, Kurt Krueger and Kirsten Krueger Aiello, his children, may have died as a result of the injuries in said accident.

> As a result of this accident, Defendants Kevin P. Krueger, Kerry Krueger, Kurt Krueger and Kirsten Krueger Aiello claim damages arising out of the death of their father William Krueger, with an action [then] pending in the Circuit Court of the City of St. Louis, bearing cause number 992–08609, a copy of which [was] attached [to the stipulations of fact] and made a part [t]hereof.

> The Automobile Club Inter–Insurance Exchange issued a Missouri Personal Auto Policy to Defendant David Carron bearing policy number A9–344307–1, a copy of which [was] attached [to the stipulations of fact] and made a part [thereof] with said policy of automobile insurance being in full force and effect on April 8, 1999.[1]

> A 1992 Jeep Wrangler motor vehicle [was] listed on the attached Declarations sheet for policy number A9–344307–1 which was issued by Plaintiff Automo-

---

1. Although it appears this policy was attached to the stipulations of fact before the trial court, our ensuing discussion of whether it provided coverage notes it was absent from Insurer's record on appeal.

bile Club Inter–Insurance Exchange to Defendant David Carron.

A 1998 Audi A4 motor vehicle [was] listed on the attached Declarations sheet for policy number A3–213306–1 which was issued by Plaintiff Automobile Club Inter–Insurance Exchange to Defendant Rommel Medrano.

Attached [to the stipulations of fact were] true and accurate copies of the depositions of Rommel Medrano, David Carron and Jason Adam Meriwether. Rommel Medrano, David Carron and Jason Adam Meriwether would testify in an identical or similar fashion in this case.

Insurer also issued a renter's policy to Medrano that was attached and incorporated into the stipulations of fact. No witnesses testified at trial, and the trial court determined the case on the stipulations.

In the first count of its declaratory judgment action, Insurer claimed no coverage existed under an automobile policy issued to Carron ("Carron Policy"). It argued that the 1987 Dodge Ram van owned by Carron that was involved in the accident was not covered under the Carron Policy, which listed only a 1992 Jeep Wrangler on the declarations sheet. Furthermore, it claimed that coverage was excluded because the accident occurred while the van was being used to carry property "for a fee or compensation" in that it was being used to deliver newspapers at the time.

In its second count, Insurer argued that there was no coverage under a policy issued to Rommel Medrano ("Medrano Policy"), which listed a 1998 Audi A4 on the declarations sheet. It claimed that coverage of Carron's van was excluded under the Medrano Policy because it was a vehicle other than Medrano's covered auto that was "furnished or available for [Medrano's] regular use." Further, it contends that coverage was excluded because the liability claims arose while the van was being used to carry property "for a fee or compensation." In its third count, Insurer urged the trial court to find that no coverage existed under a renter's policy issued to Medrano because the claims were in connection with a business engaged in by him.

The trial court found coverage under both the Carron Policy and the Medrano Policy, but it found that no coverage existed under the renter's policy issued to Medrano. Insurer appeals the trial court's judgment wherein it found coverage under the Carron Policy and the Medrano Policy.

In its first point, Insurer argues that the trial court erred in finding coverage under the Carron Policy. It claims the van was not a covered vehicle under the policy and coverage was excluded because Meriwether was driving the van to deliver newspapers. In addition, Carron owned the van, which Insurer contends rendered it available for his "regular use."

We note that deficiencies in the record on appeal preclude any analysis on the merits of Insurer's first point. Rule 81.12(a) instructs: "The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented . . . to the appellate court for decision." Furthermore, the "[a]ppellant shall be responsible for preparing the legal file." Rule 81.12(b). In the instant case, Insurer was charged with preparing the legal file and ensuring that it contained the documents necessary for appellate review. *See City of St. Clair v. Cash*, 579 S.W.2d 763, 764 (Mo.App.1979).

The parties state in their briefs that the Carron Policy and Medrano Policy are identical, and they cite to the same policy language in their respective arguments in

their first and second points on appeal. However, the policy language contained in the legal file that is sworn to be "a true and exact copy of the Missouri Personal Auto Policy of **DAVE CARRON** in effect" on the date of the accident contains different language from that cited by the parties and appears to be only a photocopy of an endorsement and not a photocopy of the policy itself.[2]

In addition, the exclusions cited by the parties in their briefs do not correspond with those in the photocopy of the Carron Policy as it appears in the legal file. For example, the parties debate whether exclusions 5 and 16 apply. However, the language in the Carron Policy as evidenced in the legal file contains language similar to exclusion 5 argued by the parties, but the photocopy shows the similar language appears at exclusion 2.[3] Whereas the parties discuss exclusion 16, the photocopy lists only exclusions 1 through 8. Although the parties claim the exclusions in the Medrano Policy are identical to those in the Carron Policy, comparison is precluded because neither photocopy contains both exclusions. The photocopy of the Medrano Policy contained in the legal file omits the page on which exclusion 5 presumably appears,[4] and, as previously mentioned, exclusion 16 does not appear in the Carron Policy photocopy in the legal file. The trial court cites to the Carron Policy exclusions 5 and 16 in its judgment, which indicates that whatever policy was presented before it differs from what Insurer included in its record on appeal.

■ Without knowledge of the policy language and terms, its applicability cannot be determined. *See Page v. Page*, 695 S.W.2d 479, 480 (Mo.App.1985). In light

---

2. The policy included in the legal file is denominated as "Excess Medical Payments Coverage Endorsement" and provides:

   Subject to the Exclusions, we will pay reasonable expenses incurred for necessary medical and funeral services because of **bodily injury**;
   1. Caused by accident; and
   2. Sustained by a covered person.
   . . . .
   "**Covered person**" as used in this Part means:
   1. You or any **family member**;
   a. while **occupying**; or
   b. as a **pedestrian** when struck by;
   a motor vehicle designed for use mainly on public roads or a trailer of any type.
   2. Any other **person** while **occupying your covered auto**.

3. Exclusion 5, as presented in the parties' briefs, precludes liability coverage for any person:
   5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons, property or food for a fee or compensation. This exclusion does not apply to a share-the-expense car pool or charitable delivery. However, in the policy contained in the legal file, exclusion 2 contains language similar to that cited by the parties, while exclusion 5 in

the policy in the legal file bears no resemblance to the exclusion purportedly at issue:
   We do not provide Excess Medical Payments Coverage for any **person** for **bodily injury**:
   . . . .
   2. Sustained while **occupying your covered auto** when it is being used to carry **persons**, property or food for a fee or compensation. This exclusion does not apply to a share-the-expense car pool or charitable delivery.
   . . . .
   5. Sustained while **occupying** or when struck by any vehicle other than **your covered auto** which is:
   a. owned by you; or
   b. furnished or available for your regular use.

4. Insurer attempted to file the pages of the Medrano Policy that were not included in its legal file. The motion was denied because of Insurer's failure to comply with Rule 81.15(e). Insurer was granted leave to file a complete copy of the Medrano Policy as a supplemental legal file in accordance with Rule 81.15(e), but Insurer did not subsequently file a supplemental legal file.

of the deficiencies in the legal file, any attempt at determining whether coverage existed or whether it was excluded would be based on "speculation and conjecture as to the controlling facts of the case." *Cash,* 579 S.W.2d at 764. Because of Insurer's failure, as appellant, to file a record containing the policy to be interpreted on appeal, Insurer's first point is dismissed. *See Coyne v. Coyne,* 17 S.W.3d 904, 906 (Mo.App.2000); *Martin v. Mo. Dept. of Soc. Serv.,* 997 S.W.2d 48, 49 (Mo.App. 1999).

We next address Insurer's second point wherein it argues the trial court erred in finding coverage under the Medrano Policy. It asserts the van was not a covered vehicle under the policy and coverage was excluded because Meriwether was driving the van to deliver newspapers. Further, Insurer argues that no coverage existed because Carron owned the van, which Insurer claims was available for Medrano's regular use.[5]

■ In court-tried cases, our standard of review generally is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). *Business Men's Assur. Co. of Am. v. Graham,* 984 S.W.2d 501, 505 (Mo. banc 1999). We will affirm the judgment of the trial court unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or applies the law. *Id.* Even where a case is tried on the pleadings, stipulations, exhibits, and depositions, we will defer to the trial court as the finder of fact in evaluating whether substantial evidence supports the judgment and whether the judgment is against the weight of the evidence. *Id.*

■ In a court-tried declaratory judgment action, however, interpretation of an insurance policy is a question of law, and the trial court receives no deference where resolution of the controversy is a question of law. *Union Pac. R.R. Co. v. Am. Family Mut. Ins. Co.,* 987 S.W.2d 340, 342 (Mo.App.1998) (*quoting Millers Mut. Ins. Ass'n of Ill. v. Shell Oil Co.,* 959 S.W.2d 864, 866–67 (Mo.App.1997)); *Nat'l Union Fire Ins. Co. v. City of St. Louis,* 947 S.W.2d 505, 506–07 (Mo.App.1997). Only if an ambiguity within the policy necessitates a factual determination will the standard in *Murphy* govern. *Union Pac. R.R. Co.,* 987 S.W.2d at 342 (*quoting Nat'l Union Fire Ins. Co.,* 947 S.W.2d at 506–07). Because our decision in the instant case does not concern any ambiguity, it does not extend beyond a review of the language in the Carron Policy and Medrano Policy, and our review is *de novo.* *Nat'l Union Fire Ins. Co.,* 947 S.W.2d at 507.

The Medrano Policy provides as follows:

**PART A—LIABILITY COVERAGE**

**Insuring Agreement**

Subject to the Exclusions, **we** will pay damages for **bodily injury** or **property damage** for which any **covered person** becomes legally responsible because of an **auto** accident. . . .

"**Covered person**" as used in this Part means:

1. **You** or any **family member** for the ownership, maintenance or use of any **auto** or **trailer.**

2. Any **person** using **your covered auto.**

3. For **your covered auto,** any **person** or organization but only with respect to legal responsibility for acts or

---

5. Insurer argues that, at the time of the accident, Meriwether was using the van on a regular basis to deliver newspapers for the route that Medrano ostensibly purchased from Carron and that Medrano was therefore excluded from coverage because Carron and Meriwether, who both regularly used the van to deliver newspapers, were his agents.

omissions of a **person** for whom coverage is afforded under this Part.

4. For any **auto** or **trailer,** other than **your covered auto,** any **person** or organization but only with respect to legal responsibility for acts or omissions of **you** or any **family member** for whom coverage is afforded under this Part. This provision applies only if the **person** or organization does not own or hire the **auto** or **trailer.**

The policy defines "you" or "your" as "the named insured shown in the declarations and the spouse, if domiciled in the same household."

The ultimate issue is whether the facts support a finding that the policy afforded coverage for injuries resulting from the accident and whether, if coverage exists, it is preempted by the exclusions. Although Insurer brought the declaratory judgment action, Defendants had the burden of proving coverage despite their denomination as defendants in the action. *Shelter Gen. Ins. Co. v. Siegler,* 945 S.W.2d 24, 27 (Mo. App.1997). As such, Defendants had the burden of proving that the injuries sustained by Seung Lee and William Krueger were covered under the Medrano Policy at the time of the accident. *Id.* The burden of establishing the exclusion of coverage falls on the insurer. *Am. Family Mut. Ins. Co. v. Arnold Muffler, Inc.,* 21 S.W.3d 881, 883 (Mo.App.2000).

According to the Medrano Policy terms, Defendants needed to demonstrate one of the following was true at the time of the accident in order to establish that the facts fell within the coverage provided by the policy. Under the first and fourth paragraphs of covered persons in the policy, the Defendants were required to show that Meriwether was a family member of Medrano's. In the second and third paragraphs of covered persons in the policy, Defendants needed to prove that Meri-

wether was using the automobile covered by the policy, which the declarations sheet indicated was a 1998 Audi A4.

The second and third paragraphs extend coverage on the basis that the automobile involved in the action was the covered auto. "Rommel Medrano" was the sole driver listed on the Medrano Policy, and its declarations sheet listed only a 1998 Audi A4. Medrano was not driving the 1998 Audi A4 in the accident. The automobile in the accident was a 1987 Dodge van. When the accident occurred, neither Seung Lee nor William Krueger was an occupant of the 1998 Audi A4, the covered auto, so they were not "using" the Audi at that time pursuant to the second paragraph of covered persons. The van, therefore, was not the covered auto under the Medrano Policy as necessary for coverage to exist under the second and third paragraphs of covered persons.

Furthermore, the 1987 Dodge van, which was not the "covered vehicle" under the Medrano Policy, was being driven by Meriwether at the time of the accident. None of the Defendants presented evidence that Meriwether was related to Medrano so as to render Meriwether a "family member" under the first and fourth paragraphs of covered persons.

When interpreting the meaning of an insurance policy, the provisions must be "given effect in order to accomplish the intention of the parties." *Auto. Club Inter–Ins. Exch. v. Farmers Ins. Co.,* 778 S.W.2d 772, 774 (Mo.App.1989) (*quoting Varble v. Stanley,* 306 S.W.2d 662, 664–65 (Mo.App.1957)). Furthermore, the policy language must be construed in accordance with the plain and ordinary meaning of the words, and construction is required only where ambiguity exists. *Id.; Heshion Motors, Inc. v. W. Int'l Hotels,* 600 S.W.2d 526, 537 (Mo.App.1980). We acknowledge

that any ambiguity must be strictly construed against Insurer and in favor of the insured, but we note that none of the parties claims an ambiguity exists with respect to the delineated language of the policies. *See Heshion Motors, Inc.*, 600 S.W.2d at 537.

Based on the plain meaning of the policy terms and definitions as applied to the stipulated facts, Meriwether does not fall within the definition of a "covered person" under the Medrano Policy. As such, Defendants failed to meet their burden of proof, and the trial court erred by finding otherwise.

Because we find that Defendants failed to meet their burden of proof with respect to coverage under the policy, we need not discuss Insurer's arguments that, even if coverage existed under the policy, the facts rendered the exclusions applicable.[6] Insurer's second point on appeal is granted.

The judgment of the trial court is reversed in part, and Insurer's appeal is dismissed in part.

GEORGE W. DRAPER III, P.J., and MARY K. HOFF, J., concur.

---

6. All of Defendants except Lee filed a motion to strike portions of Insurer's legal file wherein it argued that coverage was precluded by one of the exclusions. Because our analysis focuses solely on the stipulated facts, as well as the Medrano Policy as incorporated therein, we deny their motion as moot.